IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


AARON M. GRAY,

             Plaintiff,

    vs.                                      Civil Action 2:08-CV-251
                                             Judge Watson
                                             Magistrate Judge King
RICK ROSE, *et al.*,

        Defendants.

AARON M. GRAY,

        Plaintiff,

    vs.                                      Civil Action 2:08-CV-1154
                                             Judge Watson
                                             Magistrate Judge King

MUSKINGUM CO. PROSECUTORS
OFFICE,

        Defendant.


REPORT AND RECOMMENDATION

        These actions were instituted under the provisions of 42
U.S.C. §1983.  Plaintiff, a state inmate, alleges that he was subjected
to excessive force by certain deputy sheriffs while incarcerated in the
Muskingum County Jail and was coerced into dismissing a civil action
filed by him in connection with this alleged mistreatment, thus depriving
him of his right of access to the courts.  The *Complaint* in C-2-08-251,
Doc. No. 4, alleges that, on October 8, 2004, plaintiff was tasered by
defendant Deputy Sheriff Rose while plaintiff was in an "impaired mental
state" and that, on October 10, 2004, he was tasered again by defendant
Deputy Sheriff Madden while strapped in a restraint chair.  The *Complaint*
in that case also alleges that, from February 2007 to March 5, 2007,

defendant Whitacre, plaintiff's defense counsel, conspired with the Muskingum County Prosecutor to force plaintiff to dismiss a civil complaint in which he had asserted claims of assault based on the taser incidents. This *Complaint* seeks monetary damages and names as defendants the City of Zanesville,[1] Benjamin W. Whitacre, plaintiff's defense counsel in his state court criminal proceedings, the Muskingum County Prosecutor and Deputies Madden and Rose.

Some months after filing the *Complaint* in C-2-08-251, plaintiff filed another action in this Court, naming as defendants the Muskingum County Prosecutor's Office and Ron Welch and alleging that defendant Welch improperly persuaded plaintiff to "drop the civil case or face a more serious sentence," thereby denying plaintiff his right of access to the courts. *Complaint,* Doc. No. 2, C-2-08-1154. The *Complaint* in C-2-08-1154 also seeks monetary damages.[2]

This matter is now before this Court on the motions for summary judgment filed in C-2-08-251 by the Muskingum County Prosecutor, Doc. No. 30, Deputy Jennifer Madden, Doc. No. 31, defense counsel Benjamin W. Whitacre, Doc. No. 32, and Deputy Rick Rose, Doc. No. 33. Also before the Court is plaintiff's motion for summary judgment filed in both cases, Doc. No. 47, in C-2-08-251; Doc. No. 9, in C-2-08-1154.

**I**

The standard for summary judgment is well established. This

---

[1] The City of Zanesville was dismissed by prior order of this Court. *Order,* Doc. No. 28, C-2-08-251.

[2] The Court found that the cases are related and directed that the later case be transferred to the docket of the judicial officers assigned to the earlier-filed case. *Related Case Memorandum Order,* Doc. No. 44, C-2-08-251; Doc. No. 5, C-2-08-1154.

standard is found in Rule 56 of the Federal Rules of Civil Procedure, which provides in pertinent part:

> The judgment sought should be rendered forthwith if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c). Pursuant to Rule 56(c), summary judgment is appropriate if "there is no genuine issue as to any material fact ...." *Id.* In making this determination, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986). However, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Anderson,* 477 U.S. at 251.

The party moving for summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Catrett,* 477 U.S. at 323. Once the moving party has met its initial burden, the burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)); *Talley v. Bravo Pitino Restaurant, Ltd.,*

61 F.3d 1241, 1245 (6th Cir. 1995)("nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial"). "Once the burden of production has so shifted, the party opposing summary judgment cannot rest on the pleadings or merely reassert the previous allegations. It is not sufficient to 'simply show that there is some metaphysical doubt as to the material facts.'" *Glover v. Speedway Super Am. LLC,* 284 F.Supp.2d 858, 862 (S.D. Ohio 2003)(citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Instead, the non-moving party "must -- by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

In ruling on a motion for summary judgment "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Glover,* 284 F.Supp. 2d at 862 (citing *InteRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989)). Instead, a "court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties." *Id.*

## II

Defendant Madden argues, *inter alia,* that the claims asserted against her in C-2-08-251 should be dismissed for failure to timely effect service of process on her. Plaintiff's motion for leave to proceed *in forma pauperis* was filed in C-2-08-251 on March 14, 2008. Doc. No. 1, C-2-08-251. That motion was granted on March 18, 2008, Doc.

No. 2, C-2-08-251, and the *Complaint,* Doc. No. 4, C-2-08-251, was filed

on that same date. Summonses were issued by the Clerk. Doc. No. 5, C-2-

08-251. In his service papers, plaintiff directed that service of

process be made upon defendant Madden at "28 North Fourth Street,

Zanesville, Ohio 43701." Doc. No. 5, p. 6, C-2-08-251. However, the

Marshal was unable to effect service of process on this defendant, as

evidenced by the Marshal's March 25, 2008, return of service which

indicates that this defendant was "no longer" at the address specified

by plaintiff. Doc. No. 9, C-2-08-251. This defendant filed her motion

for summary judgment, which relies in part on a failure of timely service

of process, on September 10, 2008. Doc. No. 31, C-2-08-251.

Under Rule 4(m), claims against a defendant not served within

120 days after the filing of the complaint must be dismissed "without

prejudice ... unless plaintiff shows good cause for the failure." In

response to defendant Madden's argument in this regard, plaintiff takes

the position that it was the obligation of the Clerk and the Marshal to

effect service of process. Doc. No. 47, p.3, C-2-08-251. However, the

record establishes that the Clerk of this Court properly issued summonses

in this case and that the Marshal promptly attempted to effect service

of process at the address provided by the plaintiff. The fact that this

defendant could not be effectively served with process at that address

is chargeable to plaintiff, not to either the Clerk or the Marshal.

More than 120 days has now passed since the complaint in C-2-

08-251 was filed and there is no evidence that plaintiff has either

arranged for good service of process against defendant Madden or sought

an extension of time in which to do so. Under these circumstances, the

claims against defendant Madden must be dismissed for failure to timely

effect service of process on her.  *See* F.R. Civ. P. 4(m).

## III

On November 20, 2006, plaintiff filed a *pro se* complaint in the Muskingum County Court of Common Pleas, alleging that he had been "assaulted on multiple occasions" "between October 2004 and November 2004" by a number of deputies, including defendants Rose and Madden. *Exhibit A*, attached to Doc. No. 30, C-2-08-251.[3] Defendant Whitacre was appointed in January 2007 to represent plaintiff on an indictment in the Muskingum County Court of Common Pleas charging plaintiff with two drug-related offenses. *See Exhibit A* attached to Doc. No. 32, C-2-08-251; *Affidavit of Benjamin Whitacre,* ¶2, attached to Doc. No. 30, C-2-08-251 ("*Whitacre Aff.*").  Ron Welch, an Assistant Prosecuting Attorney for Muskingum County, was assigned to that criminal case. *Affidavit of Ron Welch,* ¶¶3-6, *Exhibit C,* attached to Doc. No. 30, C-2- 08-251 ("*Welch Aff.*").

Trial on the indictment was scheduled for March 2007. *Welch Aff.*, ¶30; *Whitacre Aff.*, ¶5; *Exhibit F*, p.2, attached to Doc. No. 9, C-2-08-1154.[4] Early in that month, defendant Welch extended a plea offer to defendant through defendant Whitacre. *Welch Aff.*, ¶5; *Whitacre Aff.*, ¶5.  In exchange for plaintiff's guilty pleas to the two counts of the indictment and plaintiff's dismissal, with prejudice, of his civil

---

[3]Many of the exhibits attached to the parties' motions for summary judgment are duplicates.  The Court will refer only to the exhibit as it first appears in this Court's records.

[4]The *Welch Aff. and Whitacre Aff.* refer to a trial date of March 30, 2007; the March 5, 2007 letter from defendant Whitacre to plaintiff refers to a trial date of March 15, 2007.  *See Exhibit F,* p.2, attached to Doc. No. 9, C-2-08-1154.

action, the prosecutor would recommend a total aggregate prison term of three years and take no position on possible judicial release after two years. *Exhibit F*, p.2, attached to Doc. No. 9, C-2-08-1154.[5] Plaintiff considered that offer in consultation with his counsel. *See id.* Defendant Whitacre characterizes these plea negotiations as "standard plea negotiations in a criminal case." *Whitacre Aff.,* ¶6. According to defendant Whitacre, plaintiff "did express concern centered around the ramifications of dismissing his civil lawsuit but ultimately agreed with this course of action." *Id.*, ¶7.

On March 14, 2007, plaintiff withdrew his former not guilty pleas and entered pleas of guilty to the two counts of the indictment. *Exhibit B*, attached to Doc. No. 32, C-2-08-251. Included in the terms of the plea agreement was the prosecutor's recommendation of a three year aggregate prison term; the prosecution also agreed not to oppose judicial release after two years. *Exhibit B*, p.2, attached to Doc. No. 32, C-2-08-251. No mention was made, in the plea agreement filed with the court, of dismissal of plaintiff's civil action. *See id.*

On that same date, however, plaintiff signed and filed a notice of dismissal "with prejudice" of his civil action against various deputy sheriffs. *Exhibit B*, attached to Doc. No. 30, C-2-08-251. That dismissal was drafted by defendant Whitacre "according to the plea offer that [plaintiff] accepted from the Prosecutor." *Whitacre Aff.*, ¶10.

Defendant Whitacre avers that plaintiff "received a favorable sentencing recommendation in return for his plea and dismissing his civil

---

[5]Conviction on the first count of the indictment required a mandatory prison term and was punishable by a term of imprisonment of up to 8 years. *Exhibit B,* p.1, attached to Doc. No. 32, C-2-08-251. Conviction on the second count was punishable by a prison term of up to 12 months. *Id.*

claims." *Id.*, ¶8. Had plaintiff gone to trial, defendant Whitacre believes that plaintiff "would have likely faced a greater sentence if convicted." *Id.*, ¶9.

**IV**

All defendants rely in their motions for summary judgment on plaintiff's previous dismissal of his state court action. This Court agrees that a primary issue for resolution is the validity of that dismissal, particularly as it relates to the claims asserted by plaintiff against defendants Rose and Madden in C-2-08-251.

The United States Supreme Court has held that plea agreements that include releases or waivers of civil rights actions or claims are not *per se* invalid. *Town of Newton v. Rumery*, 480 U.S. 386 (1987). Where the agreement is voluntary, where there is no evidence of prosecutorial misconduct and where enforcement of the agreement would not adversely affect the public interest, enforcement of such agreements is appropriate. *Id.*, at 398. A valid waiver will be enforced notwithstanding the fact that it waives enforcement of an important constitutional right. *Id.*, at 393. "The benefits of the agreement to [the individual] are obvious: he gained immunity from criminal prosecution in consideration of abandoning a civil suit which he may well have lost." *Id.*, at 394.

The burden of proving the enforceability of such a release agreement falls upon the party seeking to invoke the agreement as a defense to the civil rights action. *Coughlen v. Coots,* 5 F.3d 970, 974 (6th Cir. 1993). *See also Burke v. Johnson,* 167 F.3d 276, 284 (6th Cir. 1999)(proof of the enforceability of such an agreement must be made by

8

a preponderance of the evidence).

### a. Voluntariness

Among the factors that led the Supreme Court to conclude that the waiver in *Rumery* was voluntary were the sophistication of the individual involved, his representation by an "experienced criminal lawyer, who drafted the agreement," *id.*, at 394, and the fact that the individual, who was not in jail at the time, considered whether or not to accept the terms of the proposal over the course of three days prior to signing it. *Id*.

In the case presently before the Court, the record suggests that plaintiff's agreement to dismiss his civil claims was voluntary. Although the record does not include plaintiff's educational background, plaintiff's own pleadings and course of action in connection with the two lawsuits filed by him in this Court establish both his literacy and his relative comfort with judicial proceedings. Indeed, the fact that he originally filed his *pro se* civil action in the Muskingum County Court of Common Pleas demonstrates that plaintiff was cognizant of his own rights and that he had some idea how to enforce those rights in court. Moreover, plaintiff was represented by defense counsel during the course of those plea negotiations and, although plaintiff was apparently detained in jail at the time, *see Welch Aff.*, ¶4; *Whitacre Aff.*, ¶4, he actively participated in the plea negotiations. *See Exhibit F*, p.2, attached to Doc. No. 9, C-2-08-1154. Furthermore, plaintiff was aware of the terms of the agreement, which included an anticipated dismissal of his civil action, at least nine days prior to the entry of his guilty pleas pursuant to the plea agreement on March 14, 2007. *See id.* Finally, plaintiff does not contest his counsel's assertion, *Whitacre*

*Aff.*, ¶¶8-9, that the plea agreement resulted in a lesser sentence than would have been imposed had plaintiff been convicted after trial.[6] Although the release was not included in the terms of the plea agreement filed with the state trial court, and was therefore not executed under judicial supervision, this Court concludes that, on balance, consideration of the relevant factors militates in favor of a finding of voluntariness.

### b. Prosecutorial Misconduct,[7] Public Interests and the Merits of the Underlying Civil Claims

The Supreme Court in *Rumery* cautioned that a release/waiver agreement would be unenforceable if a prosecutor's interest in protecting other officials leads to the filing of "frivolous charges or to [the dismissal] of meritorious claims." *Rumery,* 480 U.S. at 395. The United States Court of Appeals for the Sixth Circuit has directed that waivers of civil rights actions be closely scrutinized for police or prosecutorial misconduct. *Coughlen,* 5 F.3d at 974. Waiver agreements should not be enforced

> where, following their use of excessive force, police officers file unfounded criminal charges as bargaining chips to cover up their own conduct or to induce the victim to give up his cause of action; or where a prosecutor, upon discovering that the victim has a meritorious civil claim, files frivolous criminal charges in order to protect the police officers.

*Id.* In the case presently before the Court, there is no evidence that

---

[6]Plaintiff seems to concede this fact but characterizes this favorable treatment as "blackmail & bribery." *Exhibit C,* p. 3, attached to Doc. No. 9, C-2-08-1154.

[7]The existence of prosecutorial misconduct is an issue for resolution by the court rather than by a jury. *Hill v. City of Cleveland,* 12 F.3d 575, 579 n.3 (6th Cir. 1993)(citing *Berry v. Peterson,* 887 F.2d 635, 637 (5th Cir. 1989)).

prosecuting authorities or deputy sheriffs filed unfounded criminal charges against plaintiff to either cover up their own misconduct or to protect other governmental officials.  Defendant Welch, the assistant prosecutor assigned to plaintiff's criminal case, states in his affidavit that he had no role in charging plaintiff with the offenses to which he eventually pled guilty.  *Welch Aff.*, ¶8.  Moreover, plaintiff's defense attorney denies any reason to believe that the charges against plaintiff were "motivated because he filed a lawsuit against Muskingum County." *Whitacre Aff.*, ¶11.  Plaintiff does not appear to dispute these assertions; indeed, a fair reading of his pleadings and filings would suggest that plaintiff's opposition to enforcement of his waiver is based on his belief -- not that the criminal charges against him were suspicious, unfounded or frivolous -- but rather that his civil claims were meritorious.  In any event, it is clear that, at the time of the alleged tasering incidents, plaintiff was already detained in the Muskingum County Jail on some criminal charges.[8]

Coughlen suggests that the strength of the underlying police misconduct claims could serve as both an indicator of prosecutorial misconduct and a barometer of the public interest:

> While a district court conducting a *Rumery* analysis should not prejudge the civil plaintiff's §1983 claim, the existence of substantial evidence of police misconduct in a particular case is by no means irrelevant to a proper *Rumery* inquiry, since it could be probative of the motives of the prosecutor for seeking such an agreement, as well as the degree to which enforcing the agreement would serve the public interest.

*Coughlen,* 5 F.2d at 794.  *See also Oliver v. City of Berklin,* 261 F.Supp.

---

[8] The Court will further consider, *infra,* the perhaps conflicting evidence surrounding this detention.

2d 870, 878 (E.D. Mich. 2003)(substantial evidence of police misconduct supports finding of a public interest in vindicating constitutional rights despite an otherwise voluntary release). Plaintiff relies heavily on his contention that the merits of his civil claims have been confirmed by the fact that defendant Rose was terminated from his employment as a deputy sheriff because of misconduct, including incidents involving plaintiff. *See Pre-disciplinary Hearing, Exhibit* attached to Doc. No. 47-3, pp. 20-28, C-2-08-251; *Arbitration Decision, Exhibit,* attached to Doc. No. 47-3, pp. 1-19, C-2-08-251.[9]

The record in this action does not provide a comprehensive articulation of the facts surrounding either plaintiff's civil claims or the criminal charges to which plaintiff pled guilty. As noted *supra,* however, there is no evidence that the criminal case in which plaintiff pled guilty was the product of prosecutorial misconduct. As also noted *supra*, a meritorious civil rights claim militates in favor of a finding that the public interest would not be served by enforcement of the waiver of that claim. *Oliver,* 261 F.Supp.2d at 878. On the other hand, doubt and uncertainty regarding the eventual outcome of both the criminal and civil proceedings would tend to support enforcement of an agreement to waive a civil claim in exchange for favorable treatment in the criminal case, *see Hill v. City of Cleveland, supra,* 12 F.3d 575, and would suggest that the public interest is served by enforcing the plea agreement. *See Rumery, supra,* 480 U.S. at 394. Particularly is this so where, as here, it appears that plaintiff received a lower sentence than

---

[9]Plaintiff also asserts, without evidentiary support, that defendant Madden was reprimanded in connection with the events giving rise to plaintiff's claims. Doc. No. 47, p.4, C-2-08-251.

he would have otherwise received without the plea agreement.

In considering the merits of plaintiff's underlying civil claims, the Court has detected what may be a significant factual issue in the record, albeit one not addressed by any of the parties. As previously noted, plaintiff's November 20, 2006, state court civil complaint referred to assaults that allegedly occurred in October and November 2004. *Exhibit A,* attached to Doc. No. 30, C-2-08-251. The complaint in that state court action made no mention of a constitutional claim or a violation of federal law. Under Ohio law, a civil claim of assault must be initiated within one year of the events giving rise to the claim. O.R.C. §2305.111. Thus, it appears that the claims asserted in plaintiff's state court civil action may have been untimely filed. If so, it cannot be said that enforcement of a voluntary waiver of the untimely claims asserted in that action would contravene public policy.

The factual issue arises in connection with dates mentioned in the *Welch Aff.* and the *Whitacre Aff.* Both affiants aver that plaintiff was arrested "on October 22, 2005," in connection with the charges to which he eventually pled guilty. *Welch Aff., ¶3; Whitacre Aff., ¶¶2, 3.* As the Court construes defendants' motions, their defense of plaintiff's dismissal of his state court civil action relies heavily on the fact that the plea agreement could not have been a function of prosecutorial over-reaching[10] because, at that time of the alleged misconduct on the part of the defendant deputies, plaintiff had already been charged with the offenses to which he eventually pled guilty.

The differing dates reflected in the record may be significant

---

[10]Defendants do not expressly address the public interest component of the *Rumery* analysis.

to this Court's consideration of the public interest and the merits of plaintiff's civil claims. The affidavits of the Assistant Prosecutor and defense counsel refer to plaintiff's arrest on October 22, 2005. *Welch Aff.*, ¶3; *Whitacre Aff.*, ¶¶2, 3. Plaintiff's complaints filed in this Court refer to events that allegedly occurred at the Muskingum County Jail in October 2004. The complaint filed by plaintiff in state court in November 2006 referred to events that allegedly occurred in October and November 2004. If the events of which plaintiff complained (and continues to complain) occurred in 2005, as the *Welch Aff.* and the *Whitacre Aff.* seem to suggest, plaintiff's state law claims of assault filed in state court may well have been timely. If those events occurred in October 2004, as the complaints filed in this Court allege, plaintiff's November 2006 state court action was untimely.

Although a conflict in the evidence would ordinarily preclude the grant of summary judgment, *see* F.R. Civ. P. 56(c), the Court concludes that the record, taken as a whole, confirms that the facts giving rise to plaintiff's claims of misconduct occurred in 2004, as plaintiff alleged, rather than in 2005, as the *Welch Aff.* and *Whitacre Aff.* seem to suggest. For example, the September 5, 2005, disciplinary hearing that addressed allegations of unnecessary force by defendant Rose, *Pre-Disciplinary Hearing*, Doc. No. 47-3, pp. 20-28, C-2-08-251, refers to incidents involving plaintiff on "November 20, 2004." *Id.,* p. 21. The arbitration decision that concluded that defendant Rose had been terminated for just cause, Doc. No. 47-3, pp. 1-19, C-2-08-251, does not expressly refer to the date of the alleged events involving plaintiff; however, the arbitrator referred to an "August 8, 2005," *id.,* p. 8, investigation of plaintiff's allegations. These dates are simply

inconsistent with the October 2005 date referred to in the *Welch Aff.* and *Whitacre Aff.*

The Court therefore finds that plaintiff's state court action was based on events that allegedly occurred, as plaintiff alleged (and continues to allege), in 2004.[11] Having made this finding, the Court concludes that plaintiff's November 20, 2006, state court action was arguably untimely. Assuming that the state court action asserted -- as a strict reading of the complaint in that action would support -- only state law claims of assault, Ohio's applicable one-year statute of limitations, O.R.C. §2305.111, would have foreclosed recovery by plaintiff in an action filed at least two years after those claims arose.

Even assuming that the state court actions were construed as asserting constitutional claims under 42 U.S.C. §1983, notwithstanding the absence of any express articulation of such claims, the action may have nevertheless been foreclosed by the applicable statute of limitations. Actions asserting claims under §1983 and arising in Ohio must be instituted within two years after the claims arose. *Browning v. Pendleton*, 869 F.2d 989 (6th Cir. 1989). Plaintiff's state court action was, as noted *supra*, filed on November 20, 2006, and referred generally to events that allegedly occurred in "October 2004 and November 2004." *Exhibit A*, attached to Doc. No. 30, C-2-08-251. The complaint filed in C-2-08-251 refers to events that allegedly occurred in October 2004. Arguably, even construing the claims asserted by plaintiff in his state court action as claims arising under §1983, those claims may nevertheless have been untimely in a lawsuit filed on November 20, 2006. *See*

---

[11]If the parties conclude that the Court has misconstrued the record, they may so indicate in their objections to this *Report and Recommendation*.

*Browning.*

Plaintiff argues that, in any event, his claims are not untimely because of "newly discovered evidence." *See* Doc. No. 47, p.4, C-2-08-251. The Court assumes that, in making this argument, plaintiff intends to refer to information disclosed to plaintiff during the course of discovery, including the fact that defendant Rose's employment as a deputy sheriff was terminated because of, *inter alia,* the events of which plaintiff complains. Under Ohio law, a cause of action occurs when the plaintiff knew or, in the exercise of reasonable diligence should have known, that he had been injured by the conduct of the defendant. *O'Stricker v. Jim Walter Corp.,* 4 Ohio St.3d 84 (1983), ¶2 of the syllabus. An injured plaintiff need not have been aware of all the facts supporting his claim. *Flowers v. Walker,* 63 Ohio St.3d 546, 549 (1992). "Instead, it is enough that some noteworthy event, the cognizable event, has occurred which does or should alert a reasonable person" that a wrong has taken place. *Zimmie v. Calfee, Halter & Griswold,* 43 Ohio St.3d 54, 58 (1989). Plaintiff does not assert, and it does not appear, that he was at anytime unaware of the alleged assaults referred to by him in his state court action. The fact that plaintiff has, since the time of the alleged assaults, acquired additional information that may be relevant to his claims will not serve to toll the running of Ohio's one-year statute of limitations. *See Flowers, supra,* 63 Ohio St.2d at 549.

Similarly, plaintiff's reliance on newly discovered evidence will not save any untimely federal claims. As noted *supra,* federal constitutional claims under 42 U.S.C. §1983 are governed, in Ohio, by a two-year statute of limitations. *Browning, supra,* 869 F.2d 989. This limitations period begins to run, however, only after plaintiff knows or,

through reasonable diligence should know, of his injury. *Sevier v. Turner,* 742 F.2d 262, 273 (6th Cir. 1984). For the reasons stated *supra,* the record reflects no facts that would suggest that the "discovery rule" would serve to toll the running of the statute of limitations even if plaintiff's state court action were construed as asserting claims under §1983.

Thus, plaintiff's state court action was at least arguably untimely, notwithstanding the fact that defendant Rose (and perhaps defendant Madden) was disciplined in connection with the facts alleged by plaintiff. At a minimum, there was uncertainty surrounding both the proper construction of the nature of the claims asserted by plaintiff in his state court action (*i.e.,* did the complaint in that action assert federal claims?) and the timeliness of those claims (*i.e.,* did the alleged events occur in October or November 2004?). That uncertainty militates in favor of enforcing plaintiff's otherwise voluntary waiver of those claims in exchange for the prosecutor's favorable sentencing recommendation in plaintiff's criminal case.

This Court therefore concludes that plaintiff's dismissal, with prejudice, of his state court civil action is enforceable.


V

All the parties agree that the claims asserted against defendant Rose (and defendant Madden) in C-2-08-251 are based on, or arise out of, the events referred to in plaintiff's state court action, which was dismissed by plaintiff with prejudice. *See Exhibit B,* attached to Doc. No. 30, C-2-08-251. Defendants argue that plaintiff's pursuit of those claims in this action is therefore foreclosed by the doctrine

of *res judicata,* or claim preclusion.

The term *res judicata* refers to the doctrines of both issue preclusion and claim preclusion. *Taylor v. Sturgell,* __ U.S. __, 128 S. Ct. 2161, 2171 (2008). "Under the doctrine of claim preclusion, a final judgment forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'" *Id.* (quoting *New Hampshire v. Maine,* 532 U.S. 742, 748 (2001)).

A federal court exercising jurisdiction over a civil rights claim under 42 U.S.C. §1983 must "give to a state court judgment the same preclusive effect as would be given that judgment under the law of the State to which that judgment was rendered." *Migra v. Warren City School Dist. Bd. of Ed.,* 465 U.S. 75 (1984).

> In Ohio, "[t]he doctrine of res judicata encompasses the two related concepts of claim preclusion, also known as res judicata or estoppel by judgment, and issue preclusion, also known as collateral estoppel." *O'Nesti v. DeBartolo Realty Corp.,* 113 Ohio St.3d 59, ¶6 of the syllabus. Claim preclusion prevents subsequent actions, by the same parties or their privies, based upon any claim arising out of a transaction that was the subject matter of a previous action. *Id.* The previous action is conclusive for all claims that were or that could have been litigated in the first action. *See Holzemer v. Urbanski* (1999), 86 Ohio St.3d 129, 133, 712 N.E. 2d 713.

*State ex rel. Schachter v. Ohio Pub. Emps. Retirement Bd.,* 121 Ohio St.3d 526, 530 (2009).

These elements have been satisfied in this case. Plaintiff is asserting in this action claims against defendants Rose and Madden, who were also named defendants in plaintiff's state court complaint. *See Exhibit A,* p.1, attached to Doc. No. 30, C-2-08-251. Moreover, the

parties appear to agree that the claims asserted against these defendants are the same claims that were, or could have been, asserted against them in plaintiff's state court action. Finally, under Ohio law, plaintiff's dismissal of his state court action with prejudice constitutes a final judgment on the merits. *See Tower City Props. v. Cuyahoga Cy. Bd. Of Revision,* 49 Ohio St.3d 67, 69 (1990)(quoting Staff Note to Civil R. 41 ("Thus, an action dismissed 'with prejudice' is vulnerable to the defense of *res judicata.*")).

Because plaintiff voluntarily dismissed his state court action with prejudice, a dismissal that this Court has concluded is enforceable, plaintiff's claims asserted in C-2-08-251 against defendants Rose and Madden are foreclosed by the doctrine of claim preclusion.

## VI

As it relates to the Muskingum County Prosecutor and Ron Welch, the complaints in both C-2-08-251 and C-2-08-1154 seek monetary damages. Prosecutors, however, are entitled to absolute immunity from liability for monetary damages arising out of conduct "intimately associated with the judicial phase of the criminal process." *Holloway v. Brush,* 220 F.3d 767, 774 (6th Cir. 2000)(quoting *Imbler v. Pachtman,* 424 U.S. 409, 430 (1976)). This absolute immunity confers protection from exposure to lawsuits in which the prosecutor's "challenged activities [were] an 'integral part of the judicial process.'" *Grant v. Hollenbach,* 870 F.2d 1135, 1137 (6th Cir. 1989)(quoting *Imbler,* 424 U.S. at 430)). The fact that a plaintiff is persuaded that a prosecutor engaged in misconduct is not determinative. Indeed, even a prosecutor who knowingly presented false testimony at trial enjoys this protection,

*Imbler,* 424 U.S. at 413, 430, as is even a prosecutor who fabricated evidence presented before a grand jury and at trial, *Buckley v. Fitzsimmons,* 509 U.S. 259, 267 n.3 (1993).

Plaintiff's claims against defendant Welch in this action arise out of the latter's participation in the plea negotiation process. That process is a quintessential prosecutorial function and is intimately involved with the criminal judicial process. *See, e.g., Hinds v. State of Tenn.,* 888 F.Supp. 854, 857 (W.D. Tenn. 1995)("[C]onduct associated with plea bargaining is clearly not administrative or investigative but rather is so intimately associated with the prosecutor's role as an advocate of the State in the judicial process that the prosecutor is absolutely immune in his individual capacity from §1983 liability for such actions."). *See also Cole v. Smith,* No. 97-59640, 1999 WL 685940 (6th Cir., Aug. 24, 1999); *Fields v. Hall,* 2009 WL 274965, *3 (S.D. Ohio, February 4, 2009)("Since plaintiff's claims against defendant Deters relate to his conduct before the grand jury and as an advocate for the State during plea negotiations, the conduct in question falls squarely under the prosecutorial absolute immunity bar recognized in *Imbler* and *Buckley*.").

Because defendant Welch is absolutely immune from the relief sought in this action, a proposition with which plaintiff does not disagree, *see* Doc. No. 47, p. 2, in C-2-08-251,[12] the Court concludes that defendant Welch's motion for summary judgment is meritorious.

---

[12]Plaintiff does not oppose the motion for summary judgment filed by the defendant prosecutor and in fact asks that this defendant be dismissed from the action. *Plaintiff's Motion for Summary Judgment*, Doc. No. 47, p.1, C-2-08-251.

In C-2-08-251, plaintiff alleges that defendant Whitacre, plaintiff's court-appointed defense attorney in the criminal case, "conspired with the Muskingum County Prosecutor... to force Plaintiff to dismiss his civil complaint... on March 14, 2007." *Complaint,* p. 5, C-2-08-251. This defendant filed a motion for summary judgment, Doc. No. 32, and plaintiff was granted the opportunity to respond to that motion and was advised of the consequences of his failure to respond. *Order,* Doc. No. 34. Nevertheless, plaintiff filed only a document captioned *Motion for Summary Judgment in Reference to Rick Rose, Defendant and Motion in Opposition to Defendants, Muskingum Co. Prosecutor and Jennifer Maddens Motion(s) for Summary Judgments* [sic]*,* Doc. No. 47, C-2-08-251, and a document captioned *Opposition to Rick Rose Motion for Summary Judgment,* Doc. No. 42, C-2-08-251. It therefore appears that plaintiff does not intend to respond to the motion for summary judgment filed on behalf of defendant Whitacre.

Section 1983 authorizes recovery against "[e]very person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, immunities secured by the Constitution and laws. ..." 42 U.S.C. §1983. As it relates to defendant Whitacre, the only evidence before this Court is that he engaged in the normal procedures involved in defending a client charged in a criminal case, including plea negotiations with the prosecutor. Attorneys, even attorneys appointed by the court, do not act under color of state law for purposes of claims asserted against them

under 42 U.S.C. §1983.  *Polk Co. v. Dodson,* 454 U.S. 312 (1981).

It is true that the complaint in C-2-08-251 alleges a conspiracy between defendant Whitacre and the prosecution.  An otherwise private person acts "under color" of state law if that person conspires with state officials to deprive another of federal rights.  *Dennis v. Sparks,* 449 U.S. 24 (1980).  However, plaintiff offers no evidence, nor does he even allege facts to support an allegation that defendant Whitacre conspired with defendant Welch with the intention of depriving plaintiff of his constitutional rights.  In this regard, plaintiff cannot stand merely on the unverified, conclusory allegations, made in his complaint, that defendant Whitacre conspired with defendant Welch.  *See* F.R. Civ. P. 56(e)(2).[13]

Accordingly, defendant Welch is also entitled to summary judgment in this action.

It is therefore **RECOMMENDED** that the motions for summary judgment filed in C-2-08-251 on behalf of the Muskingum County Prosecutor, Doc. No. 30, Deputy Jennifer Madden, Doc. No. 31, Benjamin W. Whitacre, Doc. No. 32, and Deputy Rick Rose, Doc. No. 33, be **GRANTED.** It is further **RECOMMENDED** that plaintiff's motion for summary judgment, Doc. No. 47, C-2-08-251; Doc. No. 9, C-2-08-1154, be **DENIED.**

If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within ten (10) days, file and serve on all parties objections to the *Report and Recommendation,* specifically

---

[13]"***Opposing Party's Obligation to Respond.***  When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must -- by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

designating this *Report and Recommendation,* and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1); F.R. Civ. P. 72(b). Response to objections must be filed within ten (10) days after being served with a copy thereof. F.R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local 231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).


July 10, 2009                    *s/Norah McCann King*
                                 Norah McCann King
                         United States Magistrate Judge